UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH D. CLEMENS,

    Plaintiff,

v.                                              Case No. 1:13-cv-514
                                                  Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                              /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on May 12, 1979 (AR 161).[1] He alleged a disability onset date of December 1, 2005, which was later amended to September 22, 2011 (AR 10, 161). Plaintiff attended two years of college and had previous employment as an active duty marine, bartender/security person at a sports club, a field engineer, a security guard, and a supervisor at a retail liquor store (AR 166). Plaintiff identified his disabling conditions as angioedema idiopathic type II acquired, lumbosacral strain with degenerative disc disease, deviated septum, asthma and urticaria (AR 165).[2]

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] "Angioedema" is defined as "a vascular reaction involving the deep dermis or subcutaneous or submucosal tissues, representing localized edema caused by dilatation and increased permeability of the capillaries, and characterized by the development of giant wheals." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 78. A "wheal" is defined as "a smooth, slightly elevated area on the body surface, which is redder or paler than the surrounding skin" and "is often attended with severe itching. . . changing its size or shape, or disappearing, within a few hours." *Id.* at p. 1844. "Urticaria" is the same physiologic reaction

The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 1, 2013 (AR 10-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

---

as angioedema "occurring in the superficial portions of the dermis." *Id.* at p. 78.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the amended onset date of September 22, 2011 and that he met the insured status requirements of the Social Security Act through December 31, 2013 (AR 12). At the second step, the ALJ found that plaintiff had the following severe impairments: idiopathic angioedema; spondylosis and spondylolisthesis at L5-S1; asthma; a mood disorder, not otherwise specified; post-traumatic stress disorder; and attention deficit hyperactivity disorder (ADHD) (AR 12). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 42). Specifically, plaintiff did not meet the requirements of Listings 12.04 (affective disorders) or 12.06 (anxiety related disorders) (AR 13-14).

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) of the Regulations. Claimant is able to lift and carry a maximum of 20 pounds occasionally and a maximum of 10 pounds frequently. He is able to stand or walk for a total of two hours and sit for a total of six hours during an eight-hour workday, with normal breaks. He can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. He can balance, stoop, kneel, crouch, and crawl occasionally. Claimant can tolerate no concentrated exposure to temperature extremes, humidity, or to fumes, dusts, gases, or areas of poor ventilation. He must avoid even moderate exposure to hazards, including unprotected heights and dangerous, moving machinery. Work is limited to simple and unskilled tasks.

(AR 15). The ALJ also found that plaintiff was unable to perform any of his past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the regional economy (defined as the State of Michigan) (AR 20-21). Specifically, plaintiff could perform the following: office helper (3,200 jobs); inspector (3,800 jobs); and assembler (4,500 jobs) (AR 21). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 22, 2011 (the amended onset date) through March 1, 2013 (the date of the decision) (AR 21).

### III. ANALYSIS

Plaintiff raised two issues (with sub-issues) on appeal.

**A.  Did the Commissioner err by failing to properly apply what is commonly known as the "Treating Physician Rule," pursuant to 20 C.F.R. § 404.1527(c).**

**1.  The ALJ Adopted the physical residual functional capacity (RFC) of a single decision maker over the opinion of treating physician Kathleen O'Hare, M.D.**

Plaintiff contends that the ALJ improperly adopted the state agency physical RFC assessment which was prepared by a single decision maker (SDM) (AR 78-80) rather than the opinions offered by his treating physician. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."

5

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, an SDM determined that plaintiff was not disabled, based in part on an RFC assessment completed by the SDM, Donna Sheffey (AR 78-81). The SDM model for the initial evaluation of disability claims is authorized by 20 C.F.R. § 404.906(b)(2) which provides that:

> In the single decisionmaker model, the decisionmaker will make the disability determination and may also determine whether the other conditions for entitlement to benefits based on disability are met. The decisionmaker will make the disability determination after any appropriate consultation with a medical or psychological consultant. The medical or psychological consultant will not be required to sign the disability determination forms we use to have the State agency certify the determination of disability to us (see § 404.1615). However, before an initial determination is made that a claimant is not disabled in any case where there is

>  evidence which indicates the existence of a mental impairment, the decisionmaker will make every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment pursuant to our existing procedures (see § 404.1617).  In some instances the decisionmaker may be the disability claim manager described in paragraph (b)(1) of this section.  When the decisionmaker is a State agency employee, a team of individuals that includes a Federal employee will determine whether the other conditions for entitlement to benefits are met.

20 C.F.R. § 404.906(b)(2).

As one court explained:

> This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants. The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan.  This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing. Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants.  The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA–4734–BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05.

*Guyaux v. Commissioner of Social Security*, No. 13-12076, 2014 WL 4197353 at *17 (E.D. Mich. Aug. 22, 2014) (footnote and citations omitted).  Notably, "[o]nce the claimant's application reaches the ALJ, however, the SDM's assessment is no longer relevant to the determination of disability." *White v. Commissioner of Social Security*, No. 12-cv-12833, 2013 WL 4414727 at *8 (E.D. Mich. Aug. 14, 2013).

In his decision, the ALJ stated that "[t]he undersigned has not weighed or considered the State Agency's physical residual functional capacity assessment in exhibit 1A because a licensed physician did not make that determination" (AR 19).  While plaintiff speculates that "[t]he ALJ

7

obviously used the SDM's RFC as the basis for his RFC," this speculation is contrary to the record. Accordingly, plaintiff's claim of error will be denied.

> **2. The ALJ failed to weigh the factors required by 20 C.F.R. § 404.1527(c).**
>
> **3. The ALJ failed to provide good reasons for rejecting the opinion of Dr. O'Hare.**

Plaintiff contends that the ALJ failed to give controlling weight to the opinion of Dr. O'Hare, a physician at the Veteran's Administration (VA) clinic who treated him since August 18, 2008 (AR 757). The ALJ addressed the doctor's opinions as follows:

> As for the opinion evidence, the undersigned assigns reduced weight to the December 2012 opinion statements of Kathleen O'Hare, MD, of the VA outpatient clinic (Exhibits 7F-8F) [AR 757-68]. Regarding page 7 of exhibit 7F, which contains leading questions concerning the impact of the claimant's impairments, the record of actual medical treatment for the claimant's impairments does not support the suggested limitations in any way. The proposed mental residual functional capacity assessment (exhibit 8F) indicated that the claimant was not significantly limited in the ability to perform a variety of mental work activities and that Dr. O'Hare was unable to rate the claimant's ability to perform some mental tasks.

(AR 19).

The Court concludes that the ALJ did not provide an adequate explanation for assigning reduced weight to Dr. O'Hare's opinions. The ALJ did not explain which aspects of Dr. O'Hare's opinions he rejected other than by referring to the doctor's responses to unidentified "leading questions" which touched on plaintiff's impairments. In addition, the ALJ did not refer to which of the 464 pages of VA medical records failed to support the doctor's opinion (Exhibits 1F and 3F, AR 237-40 and 255-715).

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every

8

piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the Court cannot trace the path of the ALJ's reasoning with respect to Dr. O'Hare's opinions. *See Heston*, 245 F.3d at 534-35; *Diaz*, 55 F.3d at 307. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. O'Hare's opinions.

> **B.** **Did the Commissioner err by failing to properly weigh the determination by the Veteran's Administration (VA) that plaintiff is disabled and unemployable, contrary to 20 C.F.R. § 404.1512(b)(5) and Social Security Ruling (SSR) 06-3p?**

Plaintiff contends that the ALJ summary rejected the disability determination from the VA that found him disabled. Plaintiff contends that the ALJ should have reviewed this evidence pursuant to 20 C.F.R. § 404.1512(b) which defines "evidence" as "anything you or anyone else submits to us or that we obtain that relates to your claim" and includes "[d]ecisions by any governmental or nongovernmental agency about whether you are disabled or blind[.]" 20 C.F.R. § 404.1512(b)(5). While 20 C.F.R. § 404.1512(b)(5) includes the VA disability determination as evidence related to a claim for disability under the Social Security Act, this regulation must be read in tandem with 20 C.F.R. § 404.1504, which provides that:

> A decision by any nongovernmental agency any other governmental agency about whether you are disabled or blind is based upon its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F. R. § 404.1504.

Plaintiff also relies on SSR 06-03p,[3] which provides in pertinent part that:

Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 4 04.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules. We will evaluate the opinion evidence from medical sources, as well as "non-medical sources" who have had contact with the individual in their professional capacity, used by other agencies, that are in our case record, in accordance with 20 CFR 404.1527, 416.927, Social Security Rulings 96-2p and 96-5p, and the applicable factors listed above in the section "Factors for Weighing Opinion Evidence."

Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

SSR 06-03p.

Here, the ALJ addressed the VA's disability determination as follows:

Claimant's history of military service is commendable. Claimant is presently receiving a service-connected disability through the Veterans' Administration. The

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson*, 378 F.3d at 549 (citations omitted).

> determinations of other governmental and non-governmental disability programs are based on their own rules and are not binding upon the Social Security Administration (20 CFR 404.1504).

(AR 18). While the ALJ states that the Social Security Administration is not bound by the VA's decision, he did not provide any explanation beyond citing the regulation nor did he even address the nature of the VA's disability determination (AR 156-60). In short, the ALJ failed to provide any explanation regarding the relevance of the VA's disability determination. *See, e.g., Ritchie v. Commissioner of Social Security*, 540 Fed.Appx. 508, 510-11 (6th Cir. 2013) (ALJ properly considered the VA's disability determination when he described some of the medical findings made by the VA to demonstrate that they are not compatible with a finding of disability under the social security regulations"). Accordingly, on remand, the ALJ should provide an explanation for the consideration given to plaintiff's VA disability determination.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should (1) re-evaluate Dr. Hare's opinions, and (2) provide an explanation for the consideration given to plaintiff's VA disability determination. A judgment consistent with this opinion will be issued forthwith.


Dated: September 11, 2014              /s/ Hugh W. Brenneman, Jr.
                                       HUGH W. BRENNEMAN, JR.
                                       United States Magistrate Judge